IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| B.E. TECHNOLOGY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:12-cv-02829-JPM-tmp |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER DENYING MOTION TO TRANSFER VENUE

Before the Court is Defendant Microsoft Corporation's ("Defendant" or "Microsoft") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), filed January 18, 2013. (ECF No. 30.) For the reasons that follow, the Motion is DENIED.

I.  BACKGROUND

This case concerns Defendant Microsoft's alleged infringement of United States Patent No. 6,628,314 (the "'314 patent") and United States Patent No. 6,771,290 (the "'290 patent"). (ECF No. 1.) Plaintiff B.E. Technology, LLC ("Plaintiff or "B.E.") is the assignee of both the '314 and '290 patents (ECF No. 38 at 2), currently owning "all right, title, and interest throughout the period of the infringement" in the respective patents (ECF No. 1 ¶¶ 13, 16).

B.E. alleges that Microsoft infringed the '314 patent "by using a method of providing demographically targeted advertising

that directly infringes at least Claim 11 of the '314 patent either literally or under the doctrine of equivalents." (Id. ¶ 14.) Further, B.E. alleges that Microsoft infringed the '290 patent "by using, selling, and offering to sell in the United States tablet computer products that directly infringe at least Claim 2 of the '290 patent either literally or under the doctrine of equivalents." (Id. ¶ 17.)

B.E. filed a Complaint in this Court on September 21, 2012. (ECF No. 1.) Microsoft filed its Answer to the Complaint on December 31, 2012 (ECF No. 27), and its Motion to Transfer Venue on January 18, 2013 (ECF No. 30). B.E. filed its Memorandum in Opposition to Defendant's Motion to Transfer Venue on February 4, 2013. (ECF No. 38.) With leave of Court, Microsoft filed a Reply Memorandum in Support of Its Motion to Transfer on February 21, 2013. (ECF No. 45.) On February 8, 2013, Microsoft filed a Motion to Stay pending resolution of its Motion to Transfer Venue. (ECF No. 40.) The Court granted Microsoft's Motion to Stay on February 11, 2013. (ECF No. 41.)

Microsoft seeks to transfer this case to the Western District of Washington, or, in the alternative, to the Northern District of California. (ECF No. 30 at 1.) To support its Motion, Microsoft contends that "the vast majority of witnesses, documents, and other physical evidence are expected to be located in the Western District of Washington and the Northern

2

District of California, where Microsoft has operations relevant
to the accused products." (ECF No. 30-1 at 1.) Further,
Microsoft asserts that "various third-party prior art witnesses
will be located in Northern California," and "a number of the
engineers that worked on" Microsoft's MSN Services and are
potential witnesses, but are no longer employed by Microsoft,
"may reside in the Western District of Washington." (Id. at 10
n.5.)

B.E. opposes Microsoft's Motion to Transfer. B.E. is a
limited-liability company incorporated in Delaware. (ECF No. 1
¶ 2.) B.E. was originally registered in Michigan, but formally
registered to conduct business in Tennessee in September 2012.
(ECF No. 38 at 2.) B.E. contends that Memphis, Tennessee, is
its principal place of business. (ECF No. 1 ¶ 2.) Martin David
Hoyle ("Hoyle"), B.E.'s founder and CEO, is the named-inventor
of the '314 patent. (ECF No. 38 at 1, 2.) Hoyle asserts he has
been a resident of Tennessee since April, 2006. (Id.)

B.E. argues that transfer is inappropriate because it has
substantial connections with this district. B.E. argues that
Hoyle has been "present in this District since 2006, and B.E.
since at least 2008," and that this district is B.E.'s principal
place of business. (Id. at 5.) B.E. also argues that its
corporate documents, including documents relating to the

"conception and reduction to practice" of the patent-in-suit,
are located in this District.  (Id. at 5.)

## II. STANDARD

Microsoft moves the Court to transfer this case to the
Western District of Washington, or, alternatively, to the
Northern District of California, pursuant to 28 U.S.C. §
1404(a).  (ECF No. 30 at 1.)  The statute provides that "[f]or
the convenience of the parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any
other district or division where it might have been brought."
28 U.S.C. § 1404(a).  "As the permissive language of the
transfer statute suggests, district courts have 'broad
discretion' to determine when party 'convenience' or 'the
interest of justice' make a transfer appropriate."  Reese v. CNH
Am. LLC, 574 F.3d 315, 320 (6th Cir. 2009).

In determining whether to transfer a case under § 1404(a),
the court must first determine whether the claim could have been
brought in the transferee district.  28 U.S.C. § 1404(a)
(allowing transfer to any other district in which the claim
"might have been brought").  Once the court has made this
threshold determination, the court must then determine whether
party and witness "convenience" and "the interest of justice"
favor transfer to the proposed transferee district.  Reese, 574
F.3d at 320; Esperson v. Trugreen Ltd., No. 2:10-cv-02130-STA-

4

cgc, 2010 WL 4362794, at *5 (W.D. Tenn. Oct. 5, 2010), <u>adopted</u> 2010 WL 4337823 (W.D. Tenn. Oct. 27, 2010).  In weighing these statutory factors, the court may still consider the private- and public-interest factors set forth in the pre-Section 1404(a) case, <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 508-09 (1947), but courts are not burdened with "preconceived limitations derived from the forum non conveniens doctrine."  <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29, 31 (1955) (quoting <u>All States Freight v. Modarelli</u>, 196 F.2d 1010, 1011 (3d Cir. 1952)) (internal quotation marks omitted); <u>Esperson</u>, 2010 WL 4362794, at *5.  The United States Court of Appeals for the Sixth Circuit has stated that when deciding "a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  <u>Moore v. Rohm & Haas Co.</u>, 446 F.3d 643, 647 n.1 (6th Cir. 2006).

Additionally, the "interest of justice" factor has been interpreted broadly by courts, influenced by the individualized circumstances of each case.  The United States Court of Appeals for the Federal Circuit has set forth a non-exhaustive list of pertinent public-interest factors:

> The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law.

In re Acer Am. Corp., 626 F.3d 1252, 1254 (Fed. Cir. 2010); see also In re Nintendo Co., Ltd., 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding the local-interest factor weighed heavily in favor of transfer); Cincinnati Ins. Co. v. O'Leary Paint Co., 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (considering additional factors such as the relative docket congestion of each district).

Initially, B.E. argues that there is a strong presumption in favor of its choice of forum, and its choice of forum should not be disturbed unless the defendant carries its burden to demonstrate that the balance of convenience strongly favors transfer. (ECF No. 30 at 4-6.) B.E.'s argument is erroneously derived from the more stringent forum-non-conveniens standard. Compare Hunter Fan Co. v. Minka Lighting, Inc., No. 06-2108 M1/P, 2006 WL 1627746 (W.D. Tenn. June 12, 2006) (applying the appropriate private- and public-interest factors but relying on the forum-non-conveniens doctrine to accord strong deference to the plaintiff's choice of forum), with OneStockDuq Holdings, LLC v. Becton, Dickinson, & Co., No. 2:12-cv-03037-JPM-tmp, 2013 WL 1136726, at *3 (W.D. Tenn. Mar. 18, 2013), and Roberts

6

Metals, Inc. v. Florida Props. Mktg. Grp., Inc., 138 F.R.D. 89,

92-93 (N.D. Ohio 1991) (recognizing defendants need to make a

lesser showing to overcome plaintiff's choice of forum under

§ 1404(a)), aff'd per curiam, 22 F.3d 1104 (6th Cir. 1994).

Although there is a strong presumption in favor of the

plaintiff's choice of forum under the doctrine of forum non

conveniens, under § 1404(a), a plaintiff's choice of forum may

be considered, but is entitled to less deference.  Discussing

the difference between the common-law doctrine of forum non

conveniens and the federal transfer-of-venue statute in Norwood,

the Supreme Court stated,

> When Congress adopted § 1404(a), it intended to
> do more than just codify the existing law on forum non
> conveniens. . . . [W]e believe that Congress, by the
> term "for the convenience of parties and witnesses, in
> the interest of justice," intended to permit courts to
> grant transfers upon a lesser showing of
> inconvenience.  This is not to say that the relevant
> factors have changed or that the plaintiff's choice of
> forum is not to be considered, but only that the
> discretion to be exercised is broader.

Norwood, 349 U.S. at 32; see also Lemon v. Druffel, 253 F.2d

680, 685 (6th Cir. 1958) ("The choice of the forum by the

petitioner is no longer as dominant a factor as it was prior to

the ruling in Norwood v. Kirkpatrick[.]"); Esperson, 2010 WL

4362794, at *5-6.

Defendant's burden under § 1404(a) is to demonstrate that a

change of venue to the transferee district is warranted.  See

7

Eaton v. Meathe, No. 1:11-cv-178, 2011 WL 1898238, at *2 (W.D. Mich. May 18, 2011); Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003); Roberts Metals, Inc., 138 F.R.D. at 93. "Merely shifting the inconvenience from one party to another does not meet Defendant's burden." McFadgon v. Fresh Mkt., Inc., No. 05-2151-D/V, 2005 WL 3879037, at *2 (W.D. Tenn. Oct. 21, 2005). "[T]he movant must show that the forum to which he desires to transfer the litigation is the more convenient one vis a vis the Plaintiff's initial choice." Roberts Metals, Inc., 138 F.R.D. at 93 (quoting Mead Corp. v. Oscar J. Boldt Constr. Co., 508 F. Supp. 193, 198 (S.D. Ohio 1981)) (internal quotation marks omitted). If the court determines that the "balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of [forum] should prevail." Stewart v. Am. Eagle Airlines, Inc., No. 3:10-00494, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

## III. ANALYSIS

Microsoft asserts that B.E. could have brought this action in the Western District of Washington, or, alternatively, in the Northern District of California. (See ECF No. 30-1 at 7.) B.E. does not dispute the assertion that the case could have been brought in the Northern District of California. (See ECF No. 38 at 4.) The Court agrees with the parties that B.E. could have brought suit in the Northern District of California as personal

jurisdiction over Microsoft exists in that district.  The Court
also agrees with Microsoft that the case could have been brought
in the Western District of Washington for the same reason.
Therefore, the only issue remaining is whether the balance of
the statutory factors — the convenience to the witnesses, the
convenience to the parties, and the interest of justice — favors
transfer to the Western District of Washington.  The Court will
address each statutory factor separately and balance these
factors to determine whether transfer to the Western District of
Washington, or the Northern District of California, is proper
pursuant to § 1404(a).

    **A.   Convenience of the Witnesses**

    When asserting that a transferee district is more
convenient for witnesses, a party "must produce evidence
regarding the precise details of the inconvenience" of the forum
chosen by the plaintiff.  Esperson, 2010 WL 4362794, at *8.  To
satisfy its burden, the movant must do "more than simply
assert[] that another forum would be more appropriate for the
witnesses; he must show that the witnesses will not attend or
will be severely inconvenienced if the case proceeds in the
forum district."  Id. (quoting Roberts Metals, Inc., 138 F.R.D.
at 93).  Further, "[t]o sustain a finding on [this factor] . . .
the party asserting witness inconvenience has the burden to
proffer, by affidavit or otherwise, sufficient details

9

respecting the witnesses and their potential testimony to enable a court to assess the materiality of evidence and the degree of inconvenience." <u>Eaton</u>, 2011 WL 1898238, at *3 (quoting <u>Rinks v. Hocking</u>, 1:10-CV-1102, 2011 WL 691242, at *3 (W.D. Mich. Feb. 16, 2011)) (internal quotation marks omitted).  It is the "materiality and importance of the testimony of prospective witnesses, and not merely the number of witnesses," that is crucial to this inquiry.  <u>Rinks</u>, 2011 WL 691242, at *3.

Microsoft contends that witness convenience favors transfer to the Western District of Washington or the Northern District of California.  (ECF No. 30-1 at 4-5, 8-9, ECF No. 39 at 4-6.) To support this contention, Microsoft asserts that a majority of the witnesses on which it intends to rely are located in the transferee district, or the alternative transferee district. These witnesses include Microsoft's employees in both districts and at least five non-party witnesses related to prior art likely located in the Northern District of California.  (ECF No. 30-1 at 4-5, 10 n.5; ECF No. 39 at 4-6.)

In response, B.E. does not affirmatively identify any witnesses it may call.  As Hoyle is the inventor of the patent-in-suit and a party, it is presumed his testimony will be necessary and material to B.E.'s case.  B.E. states that Hoyle is located in the Western District of Tennessee.  (ECF No. 38 at 1.)

Because the convenience of party and non-party witnesses is given different weight, the Court will analyze the witnesses separately.  See Azarm v. $1.00 Stores Servs., Inc., No. 3:08-1220, 2009 WL 1588668, at *4 (M.D. Tenn. June 5, 2009) ("[T]he convenience of potential non-party witnesses, who are not subject to the control of the parties, is a particularly weighty consideration, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

### 1.    Party Witnesses

Microsoft argues that "the potential Microsoft witnesses in this case who can provide testimony on the operation of the numerous accused Microsoft products are located in the Western District of Washington or the Northern District of California." (ECF No. 30-1 at 4-5.)  Specifically, Microsoft contends that "[m]ost if not all of the core Microsoft employees who designed and developed the accused Microsoft Surface and Microsoft Xbox 360 consoles, as well as those who designed and developed Xbox Live, Apps Marketplace, Windows Store, Xbox Video, and Xbox Games are based in the Western District of Washington." (Id. at 4 (citing Bailey Decl., ECF No. 31, ¶ 4).)  Microsoft also contends that "[m]ost if not all of the core Microsoft employees who designed and developed Microsoft Xbox Music are based in

11

Redmond, [Washington,] or Paris, France." (<u>Id.</u> at 4 n.3 (citing
Bailey Decl., ECF No. 31, ¶ 4).) Additionally, Microsoft
contends that the employees who "designed and developed
Microsoft's Bing Ads, Microsoft Advertising, and Windows Ads in
App are based in either the Western District of Washington, or
in the Northern District of California." (<u>Id.</u> (citing Bailey
Decl., ECF No. 31, ¶¶ 5-6).) Regarding its facilities in the
Northern District of California, Microsoft asserts that there
are "more than 1000 employees" located there, with "more than
100" who "work on Bing Ads, Microsoft Advertising or Windows Ads
in App." (<u>Id.</u> (citing Bailey Decl., ECF No. 31, ¶¶ 5-6).) In
its Reply, Microsoft defends its general identification of
potential employee-witnesses by stating that identifying its
witnesses with more specificity at this early stage in the
litigation would be "unduly burdensome" and "contrary to
'Congress' intent to prevent the waste of time, energy and money
and to protect litigants, witnesses and the public against
unnecessary inconvenience and expense.'" (ECF No. 45 at 5-6
(quoting <u>In re EMC Corp.</u>, Misc. No. 142, 2013 WL 324154, at *2
(Fed. Cir. Jan. 29, 2013)).)

　　Microsoft notes generally that travel to the transferor
district would impose an inconvenience for its witnesses, but
does not provide any evidence showing that its employees will be
unwilling to testify in the Western District of Tennessee if

asked to do so.  (ECF No. 30-1 at 10.)  Further, Microsoft only
states generally that the absence of these potential employee-
witnesses from Microsoft's offices would adversely affect its
operations.  (See id. at 10); see also Esperson, 2010 WL
4362794, at *8.  Courts have noted that "normally a corporation
is able to make its employees available to testify when needed."
Clark v. Dollar Gen. Corp., No. 3-00-0729, 2001 U.S. Dist. LEXIS
25975, at *9 (M.D. Tenn. Mar. 6, 2001); see also Zimmer Enters.
v. Atlandia Imps., Inc., 478 F. Supp. 2d 983, 991 (S.D. Ohio
Mar. 14, 2007) (finding that the convenience of witnesses who
are employees "will not ordinarily be considered, or at least,
that the convenience of such employees will not generally be
given the same consideration as is given to other witnesses").
Accordingly, it appears that Microsoft's employees will be able
to attend absent any evidence to the contrary.

Therefore, regarding Microsoft employees, Microsoft does
not satisfy its burden.  Microsoft argues that the burden of
proceeding in either proposed transferee district is reduced
when comparing its own employee witnesses to B.E.'s one likely
witness, Hoyle.  (ECF No. 30-1 at 9.)  The Court finds that this
only shifts the burden of inconvenience from one party to
another.  In the instant case, the Court agrees that Microsoft's
employees related to the development and operation of the
accused products are located in both proposed transferee

13

districts, and that their testimony is likely material. Microsoft, however, has only provided a general statement about the necessity of those employees to its business and has not indicated how many employees it would be inclined to call as potential witnesses. As a result, the Court cannot assess the degree to which Microsoft's business would be disrupted compared to the disruption B.E. will endure due to its CEO's absence should the case be transferred. Accordingly, the Court finds transfer would only shift the inconvenience to B.E. See McFadgon, 2005 WL 3879037, at *2.

Therefore, because § 1404(a) provides for transfer "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient," distance of travel for employee witnesses does not weigh in favor of transfer. Hunter Fan, 2006 WL 1627746, at *2 (citing Van Dusen v. Barrack, 376 U.S. 612, 645–46 (1964)).

Microsoft further argues that this factor strongly favors transfer because its employees are located in both proposed transferee districts, whereas B.E. has only one likely witness, Hoyle, who is also an interested party. (ECF No. 30-1 at 9-10.) Microsoft asserts that "[t]he convenience of one party witness does not justify the inconvenience, cost and business disruption that would be imposed upon all other witnesses from Microsoft and third parties." (Id. at 10.) Although Microsoft does not

14

specifically list its witnesses, and though its assertion is imprecise as to the materiality of the witnesses' testimony, it is not asserted that their testimony will not be relevant and material in this case.  Microsoft's general statement, however, that it believes its employees in both California and Washington are material does not aid the court in assessing (1) what the testimony of such additional material witnesses will be; (2) whether such witnesses will be unable to attend; or (3) whether and to what extent such witnesses will be inconvenienced by testifying in this district.

Microsoft relies on a United States District Court for the Eastern District of Virginia case, Koh v. Microtek International, Inc., 250 F. Supp. 2d 627 (E.D. Va. 2003), for the proposition that although a motion to transfer must normally contain specifics as to the "names, titles and locations of witnesses and the content of their testimony" (ECF No. 45 at 5 (quoting ECF No. 38 at 9)), district courts can infer witnesses are located near the infringing activities and "that witnesses involved in  design and manufacture of the accused products are material." (ECF No. 45 at 5 (quoting Koh, 250 F. Supp. 2d at 636-37) (internal quotation marks omitted).)  Recognizing that Koh is persuasive authority, the Court also notes that Microsoft misapplies it to the facts of the instant case.  In Koh, the court stated, "although the Movants have not set out

specifically any potential testimony, they have identified one individual who is located in California and two entities located in California, which participated in conception and reduction to practice of the accused product." Koh, 250 F. Supp. 2d at 637. In the instant case, Microsoft has not identified specific witnesses that "participated in [the] conception and reduction to practice of the accused products." To the contrary, Microsoft has only generally asserted that "most, if not all" of its employees working on the accused products are located in either proposed transferee district. (Bailey Decl., ECF No. 31, ¶¶ 4-5.) Microsoft further notes that it has "more than 100 employees" in the Northern District of California working on some of the accused products. (Id. ¶ 5.) These generalizations do not assist the Court in determining how many employee-witnesses Microsoft will actually seek to call, or whether the Western District Washington or the Northern District of California would be the more convenient forum for those potential witnesses. Microsoft cannot rely on such "bare allegations" to satisfy its burden. Esperson, 2010 WL 4362794, at *8.

While B.E. did not specifically identify any witnesses, it is presumed that Hoyle, as CEO and inventor of the patent-in-suit, will be a key witness. B.E., however, does not have the burden to identify more witnesses for the purposes of this

16

Motion.  Despite B.E. not identifying any individuals,
Microsoft's general identification of material witnesses who are
Microsoft employees does not satisfy its burden on this factor.
A simple numerical advantage is insufficient on the issues
raised by a motion to transfer.

Moreover, B.E. argues that "[i]t is likely that Microsoft's
California-based employees will be deposed in California where
B.E.'s lead counsel is based." (ECF No. 38 at 11.)  This
further indicates that the witness-convenience factor does not
weigh in favor of transfer.  See Hunter Fan, 2006 WL 1627746, at
*2 (finding relevant that the plaintiff planned to take
depositions of the defendant's witnesses in California in
determining that the witness convenience factor did not favor
transfer).

### 2.   Non-Party Witnesses

While convenience to party witnesses is an important
consideration, "it is the convenience of non-party witnesses,
rather than employee witnesses . . . that is the more important
factor and is accorded greater weight." Steelcase Inc. v. Smart
Techs., 336 F. Supp. 2d 714, 721 (W.D. Mich. Mar. 5, 2004)
(citation omitted) (internal quotation marks omitted).

Microsoft argues that "a number of third-party prior art
witnesses may be called upon to testify in this matter." (ECF
No. 30-1 at 10.) Microsoft states that it intends to rely on at

least five non-party witnesses who have knowledge of prior art related to the patent-in-suit, all of whom are likely located in the Northern District of California, as well as witnesses from other internet advertising companies located in California. (Id. at 10-11 & n.5.)  Microsoft also asserts that it may seek to call former Microsoft engineers involved with MSN services, which it contends is prior art, potentially located in the Western District of Washington.  (Id. at 10 n.5.)  To support its contention, Microsoft submits information from a LexisNexis public information search for six prior-art witnesses, indicating their last-known addresses.  (ECF No. 45 at 7 (citing ECF No. 45-1).)  Microsoft claims that it will not be able to compel these witnesses to testify at trial if the case remains in Tennessee, but will be able to compel the California witness to testify at trial in the Northern District of California, or compel the Washington witnesses if the case is transferred to the Western District of Washington.  (ECF No. 30-1 at 10-11; ECF No. 45 at 6-7.)

B.E. argues that the convenience of third-party witnesses is not entitled to great weight in the instant case because Microsoft has not established that the "third party testimony will be material or important."  (ECF No. 38 at 11-12.)  B.E. further argues that prior-art testimony is "almost certain to be

severely limited at the time of trial" and, therefore, such testimony does not weigh in favor of transfer.  (Id. at 12.)

B.E. acknowledges that Microsoft has identified specific third-party witnesses located in the Northern District of California regarding prior art and that those witnesses would be subject to its subpoena power, but states that, as Microsoft has requested the case be transferred to the Western District of Washington, "California-based third-parties equally are no more subject to compulsory process in Washington than they are in Tennessee."  (Id. at 13.)  B.E. notes that Microsoft concedes that it will be able to subpoena these potential third-party witnesses for testimony or document production in their home districts.  (Id.)  Further, B.E. argues that Microsoft "does not address the relevance, materiality, and importance of the testimony any witness who allegedly could not be subpoenaed might give."  (Id.)

The availability of compulsory process for unwilling witnesses is a consideration closely related to the convenience-of-witnesses factor and the costs of procuring the witness, and therefore is an important consideration for the Court.  See, e.g., In re Acer, 626 F.3d at 1255; Rinks, 2011 WL 691242, at *4.  Whether this factor should be given considerable weight depends on the materiality of the testimony to the resolution of the case.  Rinks, 2011 WL 691242, at *4.  A federal court in the

Northern District of California would be able to compel the majority of the identified prior-art witnesses to testify at trial.  See Fed. R. Civ. P. 45(b)(2).  In contrast, the majority of the prior-art witnesses would not be subject to the subpoena power in this district or the Western District of Washington, see Fed. R. Civ. P 45(c)(3)(A)(ii), but would be available for deposition in the Northern District of California if unwilling to testify in this District.  Therefore, the testimony of such witnesses potentially would "not be live and therefore could be less persuasive."  Rinks, 2011 WL 691242, at *4.

The Court finds that Microsoft has met its burden to show the nature of the third-party witnesses testimony, and that the testimony is likely material to Microsoft's invalidity and non-infringement contentions.  To the extent the non-party witnesses' testimony may be presented by deposition, witness inconvenience would not be an issue.  While Microsoft sets forth the fact that the prior-art witnesses would not be subject to subpoena in the Western District of Tennessee, the Court recognizes that the same is true if the case is transferred to the Western District of Washington – the district in which Microsoft primarily seeks transfer.  Microsoft's general statement is not sufficient to allow the Court to determine whether live testimony of Microsoft's non-party witnesses is necessary.  As a result, this factor weighs only slightly in

favor of transfer to the Northern District of California, and
does not weigh in favor of transfer to the Western District of
Washington.

**B.  Convenience of the Parties**

Microsoft argues that the convenience of the parties
requires the Court transfer this action to the Western District
of Washington, or, alternatively, to the Northern District of
California.  (ECF No. 30-1 at 1.)  While Microsoft organizes its
arguments somewhat differently than the Court, the Court finds
the considerations relevant to the convenience-of-the-parties
factor are the location of the sources of proof and the parties'
financial hardships due to litigation in the chosen forum.

**1.  Location of Sources of Proof**

Microsoft argues that "most if not all relevant Microsoft
documents and electronic files concerning the design and
development of the accused Microsoft products are maintained or
primarily accessible from Microsoft's offices in the Western
District of Washington or the Northern District of California."
(ECF No. 30-1 at 5.)  More specifically, Microsoft contends that
the documents, source code, and files relating to "Microsoft's
Surface, Xbox 360 consoles, Xbox Live, Xbox Music, Apps
Marketplace, Windows Store, Xbox Video, and Xbox Games" are
located or "are accessible from Microsoft's Western District of
Washington offices" (Bailey Decl., ECF No. 31, ¶ 4); and that

21

the documents, source code, and files relating to "Microsoft's
Bing Ads, Microsoft Advertising, and Windows Ads in App" are
located or "accessible from Microsoft's offices in the Western
District of Washington or the Northern District of California."
(Id. ¶ 6.)  Microsoft argues that, while B.E. may have documents
in the transferor district, it is likely that B.E. has already
produced its relevant documents and the quantity of any
documents in B.E.'s possession does not "compare to the volume
of documents congregated on the west coast."  (ECF No. 30-1 at
8-9.)  As a result, "the burden on Microsoft" to produce these
documents would not be present if the case is transferred.
(Id.)

    B.E. argues that, because its CEO resides in the Western
District of Tennessee, its corporate documents and records,
"including documents demonstrating the conception and reduction
to practice of [the patents-in-suit]," are located in the
Western District of Tennessee.  (ECF No. 38 at 5, 14.)  B.E.
notes that while Microsoft's sources of proof are located in
both proposed transferee districts, B.E.'s own sources of proof
are located in Tennessee and have been maintained there for
years.  (Id. at 14.)  B.E. also contends that "the location of
relevant documentary evidence is increasingly less important in
deciding motions to transfer," and that because documents can be
exchanged electronically, the weight given this factor should be

minimal.  (Id.)  B.E. finally argues that this factor does not weigh in favor of transfer because "it can be expected that Microsoft will eventually produce its documents to B.E.'s lead counsel in California, not to B.E. in Tennessee."  (Id. at 15.)

As an initial matter, the Court disagrees with B.E.'s contention that advances in electronic document transfer reduce the importance of the location-of-sources-of-proof factor.  This notion has been expressly rejected by the Federal Circuit.  See, e.g., In re Link_A_Media Devices Corp., 662 F.3d 1221, 1224 (Fed. Cir. 2011) (reversing a district court that did not consider the factor, stating, "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely"); In re Genentech, 566 F.3d at 1345-46 (finding clear error where a district court "minimized the inconvenience of requiring the petitioners to transport their documents by noting that '[t]he notion that the physical location of some relevant documents should play a substantial role in the venue analysis is somewhat antiquated in the era of electronic storage and transmission'" (quoting Sanofi-Aentis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 777 (E.D. Tex. 2009))).

The Court agrees that it is likely that the sheer volume of documents Microsoft has in its possession outnumbers the patent-related documents in B.E.'s possession, but the Court disagrees

23

that this is enough to tip the balance in favor of transfer.
The Court finds that both parties maintain some documents in
their respective districts, with Microsoft likely maintaining
material documents in both proposed transferee districts; that
both sets of documents will be integral to the proceedings; and
that Microsoft will be expected to serve its documents to B.E.'s
counsel in Northern California, not in the Western District of
Tennessee.  Microsoft's reliance on In re Genentech is
misplaced.  (See ECF No. 30-1 at 8.)  In In re Genentech, the
court found that transfer was appropriate because all of the
movants' relevant documents were located in the transferee
district or within that district's subpoena power, while there
were no relevant documents in the transferor district.  See In
re Genentech, 566 F.3d at 1345-46.  In the instant case,
Microsoft indicated that some of its relevant documents will be
located outside the transferee district whether the Court grants
transfer to Washington or to California – and thereby outside
the subpoena power of one of the two districts, and B.E. has
shown that relevant documents are located in Tennessee.  Taken
together, the aforementioned facts indicate that as to the
location of the sources of proof, either transferee district may
only be a somewhat more convenient venue for the parties to the
instant case.  This factor, however, is not sufficient, by
itself, to require transfer.

24

### 2. Financial Hardships Attendant to Litigating in the Chosen Forum

Microsoft argues that all its potential witnesses are located in the two proposed transferee districts and not in the Western District of Tennessee. (ECF No. 30-1 at 7-10.) As a result, Microsoft contends that travel to Tennessee and the attendant costs would be a great inconvenience. (Id. at 10.) Microsoft argues that this burden "would not be incurred if the case were to proceed in the Western District of Washington or the Northern District of California." (Id. at 8.)

B.E. states that it "would face a financial burden by having to litigate in the Northern District of California." (ECF No. 38 at 15.) B.E.'s CEO Hoyle states that "B.E. will incur expenses it will not incur if the case remains in Memphis." (Hoyle Decl., ECF No. 38-1, ¶ 9.) B.E. also states that "[i]t is reasonable to require companies with the wealth and size of Microsoft to litigate in jurisdictions in which they regularly conduct business." (ECF No. 38 at 8.) Further, B.E. notes that Microsoft "does not contend that is it financially incapable of bearing the expense of litigation in the Western District of Tennessee." (Id. at 15.)

The Court has considered "the relative ability of litigants to bear expenses in any particular forum" among the factors in a § 1404(a) case. Ellipsis, Inc. v. Colorworks, Inc., 329 F.

25

Supp. 2d 962, 970 (W.D. Tenn. 2004).  In the instant case,
B.E.'s CEO stated that the company will incur additional
expenses, but it has not shown with any specificity how
detrimental those expenses would be to the company.  Further,
while Hoyle stated that his personal financial status would be
adversely affected by litigating in the either proposed
transferee district, he did not state why or how his personal
finances would impact B.E., the party to the instant case.  (See
Hoyle Decl., ECF No. 38-1, ¶ 9.)  B.E. has shown that Microsoft
has the ability to bear expenses in this forum (see ECF No. 38-
3), but the Court does not find this to be a dispositive factor
in denying Microsoft's Motion.  But see Siteworks Solutions, LLC
v. Oracle Corp., No. 08-2130-A/P, 2008 WL 4415075, at *4 (W.D.
Tenn. Sept. 22, 2008) (finding the relative financial strengths
of the parties did not weigh in favor of transferring the case,
as the party opposed to transfer showed it "ha[d] no net worth,
very little revenue, no gross profits, no assets, and [would
have to] borrow from its owners in order to pay the litigation
expenses").  The Court finds that the evidence presented is
insufficient to make a showing that B.E. or Microsoft will be
adversely affected by litigating in any of the proposed forums.
The paramount consideration remains whether the Western District
of Washington, or the Northern District of California, is more
convenient to the parties than B.E.'s chosen forum.

With respect to convenience, the Court finds this factor does not weigh in favor of transfer.  While Microsoft has made a showing that costs would be reduced for its potential witnesses if the case were transferred, it has not made a showing that its business would be disrupted in an appreciable manner should the case remain in the Western District of Tennessee.  Additionally, B.E. has made a showing that its business would be disrupted in having to prosecute the instant case in either proposed transferee district.  Microsoft has shown that the proposed transferee districts are more convenient forums for it, but it has not shown that either district is a more convenient forum for both parties.  As a result, the hardship to Microsoft does not indicate transfer is more convenient.

C.   **Interests of Justice**

Microsoft argues that transfer to the Western District of Washington or Northern District of California is appropriate based on additional considerations that pertain to the interests-of-justice factor.  (ECF No. 30-1 at 11-15; ECF No. 45 at 9-10.)  These considerations include the "public-interest concerns, such as systemic integrity and fairness," of the proceedings.  See Moore, 446 F.3d at 647 n.1.  In the instant case, the Court will consider the relative trial efficiency of the transferee and transferor districts and the localized interest in the litigation.

### 1.   Trial Efficiency

Microsoft argues that this factor weighs in favor of
transfer to either proposed transferee district.  Microsoft
contends that "the median time from filing to the beginning of
trial on the merits is 19.8 months in the Western District of
Washington, compared to 20.7 months in the Western District of
Tennessee."  (ECF No. 30-1 at 12 (citing ECF No. 32-19 and ECF
No. 32-20).)  Further, Microsoft argues that the median time
from the filing of a case to the final disposition in both
proposed transferee districts is shorter than in the transferor
district.  (Id. (citing ECF No. 32-21).)  Responding to B.E.'s
claim that transferring the instant case would delay trial,
Microsoft notes that the claim is "not necessarily supported by
[B.E.'s] own statistics."  (ECF No. 45 at 10.)

B.E. argues that transfer to the Northern District of
California "would likely delay trial of this case by at least
one year while transfer to the Western District of Washington
would have a less drastic impact on scheduling but would result
in a delay nonetheless."  (ECF No. 38 at 16.)  B.E. cites 2012
statistics for the Northern District of California and the
Western District of Tennessee to illustrate that the median time
from filing to trial in the Northern District of California was
32.7 months, while the median time from filing to trial in the
Western District of Tennessee was 18.8 months.  (Id. (citing ECF

28

No. 38-4).)  B.E. cites similar statistics for the Western District of Washington, noting that the median time from filing to trial was 21.6 months.  (Id.)

Reviewing the statistics and the parties' arguments, the Court finds this factor neutral to its determination of whether the Northern District of California or the Western District of Washington is the more convenient forum.

### 2.  Local Interest

Microsoft argues that "the Western District of Washington's local interest in this controversy is 'strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community.'"  (ECF No. 30-1 at 11 (quoting In re Hoffman-LaRoche, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).)  Microsoft asserts that the local interest in the Northern District of California is strong for the same reasons. (Id.)  Finally, Microsoft argues that B.E.'s ties to the Western District of Tennessee should be discounted because it manufactured those ties in anticipation of litigation.  (Id. at 13-14.)

B.E. argues that the Western District of Tennessee has a substantial local interest in the instant case because the holder of the patent-in-suit is located here.  (ECF No. 38 at 17.)  B.E. also asserts that its ties to Tennessee are not

"recent, ephemeral, or manufactured for the purposes of litigation." (Id.) Hoyle stated that he has resided in the Western District of Tennessee since 2006, that Memphis is B.E.'s principal place of business, and that the sources of proof pertinent to the instant case are located in the District. (Hoyle Decl., ECF No. 38-1, ¶¶ 2-4, 7-8.)

The Court finds that this factor does not weigh in favor of transfer. While Microsoft has strong local ties to the Western District of Washington and the Northern District of California, the Court finds that B.E. has strong ties to the Western District of Tennessee and its connections to the District were not manufactured for the purposes of litigation. B.E.'s founder and CEO, who is also the holder of the patent-in-suit, has resided in the district for seven years. B.E.'s connections, therefore, are neither "recent" nor "ephemeral." As a result, Microsoft has not demonstrated that either transferee districts' local interest outweighs that of the Western District of Tennessee.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that, in balancing the statutory factors, Microsoft has not demonstrated that the Western District of Washington or the Northern District of California is a more convenient forum than the Western

District of Tennessee.   Therefore, Microsoft's Motion to Transfer Venue is DENIED.

Accordingly, the Court hereby LIFTS the February 11, 2013, stay of all proceedings.  (ECF No. 41.)  Regarding B.E.'s Motion to Dismiss and Motion to Strike, filed January 25, 2013 (ECF No. 34), Microsoft shall have fourteen (14) days from the date of entry of this Order, up to and including July 30, 2013, to file its Responses to B.E's Motions.

**IT IS SO ORDERED** this 16th day of July, 2013.

/s/ Jon P. McCalla_____
CHIEF U.S. DISTRICT JUDGE